IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VASCULAR VENTURES, LLC,   :
           :
  Plaintiff,     :
           :
vs.          : CIVIL ACTION NO. 16-00481-KD-B
           :
AMERICAN VASCULAR ACCESS, LLC, :
*et al.*,         :
           :
  Defendants.    :

## REPORT AND RECOMMENDATION

This case is before the Court on Plaintiff Vascular Ventures, LLC's Motion to Remand (Doc. 7), Defendant American Vascular Access, LLC's Motion to Transfer (Doc. 2), the "AVA Affiliates" and "Nominal" Defendants'[1] Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 3), and Defendants American Vascular Access, LLC and Janet R. Dees' Motion to Dismiss for Failure to State a Claim. (Doc. 4). The motions, which have been fully briefed and are ripe for resolution, have been referred to the undersigned for a report and recommendation

---

[1] The "AVA Affiliates" Defendants are: AVA Sarasota Holdings, LLC; AVA Newnan Holdings, LLC; AVA Columbus Holdings, LLC; AVA Douglas Holdings, LLC; AVA Saint Louis Holdings, LLC; AVA Valley Holdings, LLC; and AVA Duval Holdings, LLC. (Doc. 3 at 1). The "Nominal" Defendants are: Foothill Vascular Center, Inc.; Manasota Vascular Center, LLC; Newnan Vascular Center, LLC; Columbus Vascular Center, LLC; Gateway Vascular Center, LLC; Valley Interventional Medical Associates, PLLC; and Duval Vascular Center, LLC. (Id.).

pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Plaintiff's Motion to Remand (Doc. 7) be DENIED, that Defendant's Motion to Transfer be DENIED (Doc. 2), that the AVA Affiliates and Nominal Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 3) be GRANTED, and that Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 4) be GRANTED IN PART AND DENIED IN PART.

## I. Background Facts

Plaintiff Vascular Ventures, LLC ("Vascular Ventures") commenced this action in the Circuit Court of Mobile County, Alabama on August 9, 2016, against Defendants American Vascular Access, LLC ("American Vascular"), Janet R. Dees ("Dees"), the AVA Affiliates Defendants, the Nominal Defendants, and various fictitious defendants. (Doc. 1-2 at 2-3). In the complaint, Plaintiff alleges claims against Defendants American Vascular and Dees for Breach of Contract (Count One), Negligent/Reckless Misrepresentation (Count Two), Promissory Fraud (Count Three), Fraudulent Suppression (Count Four), and Fraud in the Inducement (Count Five); against Defendants American Vascular, Dees, and the AVA Affiliates for Conspiracy (Count Six); and against Defendants AVA Affiliates for Intentional Interference with a Contractual Relation (Count Seven) and Intentional Interference with a

Business Relationship (Count Eight).[2]   (Doc. 1-2 at 10-19). According to Plaintiff, in 2009, Defendants American Vascular and Janet Dees began negotiating with the doctor members of Plaintiff Vascular Ventures to purchase a 40% interest in their lab-based interventional nephrology practice in Mobile, Alabama, and, as incentive for the doctors selling a 40% interest in their practice, Defendants promised the doctors and Vascular Ventures the opportunity to invest, up to 10%, in Defendant American Vascular's future business ventures. (Id. at 6-7; Doc. 11 at 3).

On September 12, 2016, Defendant American Vascular filed a Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction. (Doc. 1). On September 12, 2016, Defendant American Vascular filed a Motion to Transfer this action to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) on the grounds of forum non conveniens and the parties' agreed forum under a forum selection clause. (Doc. 2). On September 12, 2016, the AVA Affiliates and the Nominal Defendants filed a Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction. (Doc. 3). On September 12, 2016, Defendants American Vascular and Dees filed a Rule 12(b)(6) Motion to Dismiss for failure to state a claim. (Doc. 4). On September 30, 2016, Plaintiff Vascular Ventures filed a Motion to Remand this action to state court alleging that Defendant American Vascular did not meet its burden of establishing diversity

---

[2] Plaintiff asserts no claims against the Nominal Defendants. (Doc. 1-2).

jurisdiction because it failed to adequately establish the requisite amount in controversy. (Doc. 7 at 2). These motions have been fully briefed and are now ready for resolution.

## II. Motion to Remand

### A. <u>Standard of Review</u>

As set forth above, this action was removed by Defendant American Vascular pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). Title 28 U.S.C. § 1441(a) provides, in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

In addition, 28 U.S.C. § 1446(b) provides in part:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

It is well established that, "[i]n a removal action, the party asserting jurisdiction has the burden of establishing proof of jurisdiction by a preponderance of the evidence."

4

Wiltew v. Parker, 2009 U.S. Dist. LEXIS 101741, *1-2, 2009 WL
3615041, *2 (S.D. Ala. Oct. 30, 2009); Lowery v. Alabama Power
Co., 483 F.3d 1184, 1210 (11th Cir. 2007)).   In a removal
action, the burden is upon the defendant. Id.; see also
Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th
Cir. 2008) ("A removing defendant bears the burden of proving
proper federal jurisdiction . . . [and] [a]ny doubts about the
propriety of federal jurisdiction should be resolved in favor of
remand to state court.")).   In addition, "[b]ecause removal
infringes upon state sovereignty and implicates central concepts
of federalism, removal statutes must be construed narrowly, with
all doubts resolved in favor of remand." Holloway v. Morrow,
2008 U.S. Dist. LEXIS 10318, *5, 2008 WL 401305, *2 (S.D. Ala.
Feb. 11, 2008) (citing University of South Alabama v. American
Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) (explaining that
strict construction of removal statutes derives from
"significant federalism concerns" raised by removal
jurisdiction); see also Russell Corp. v. American Home Assur.,
Co., 264 F.3d 1040, 1050 (11th Cir. 2001) ("Federal courts are
courts of limited jurisdiction, and there is a presumption
against the exercise of federal jurisdiction, such that all
uncertainties as to removal jurisdiction are to be resolved in
favor of remand."). "Thus, under § 1446(b), in assessing the
propriety of removal, the court considers the document received

5

by the defendant from the plaintiff -- be it the initial complaint or a later received paper -- and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Lowery, 483 F.3d at 1213.

Where the alleged basis for federal jurisdiction is diversity under 28 U.S.C. § 1332, the removing defendant has the burden of demonstrating that there is (1) complete diversity of citizenship and (2) an amount-in-controversy greater than $75,000. See 28 U.S.C. § 1332(a). Here, the parties do not dispute that there is complete diversity of citizenship between the parties. Rather, the sole question before the Court on Plaintiff's Motion to Remand is whether the removing Defendant has established the requisite amount in controversy. (Doc. 7).

With respect to the amount in controversy requirement, where the plaintiff "has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Pretka v. Kolter City Plaza, II, Inc., 608 F.3d 744, 752 (11th Cir. 2010). A removing defendant need only show that "the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." Roe v. Michelin N.A., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1357 (11th Cir. 1996)). A removing defendant is not required "to

6

prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Renfroe v. Allstate Prop. & Cas. Ins. Co., 2010 U.S. Dist. LEXIS 111336, *6, 2010 WL 4117038, * 2 (S.D. Ala. Sept. 23, 2010) (quoting Pretka, 608 F.3d at 754). "When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Beasley v. Fred's Inc., 2008 U.S. Dist. LEXIS 26210, *3-4, 2008 WL 899249, *1 (S.D. Ala. Mar. 31, 2008) (quoting Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001)). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Id. In addition, the Eleventh Circuit has made clear that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." Roe, 613 F.3d at 1062.

### B. Analysis

In the complaint in this case, Plaintiff seeks unspecified compensatory and punitive damages, as well as equitable relief, for Defendants' alleged breach of contract and intentional torts (including fraud, conspiracy, and intentional interference with contractual and business relationships) arising out of a joint

business venture in which Defendants allegedly failed to fulfill their obligations to offer Plaintiff and its member doctors the opportunity to participate in future joint investment ventures.[3] (Doc. 1-2 at 2-19). Because the amount in controversy is not facially apparent from the complaint, the Court considers other relevant evidence of the amount in controversy in this case.

The evidence shows that on September 12, 2016, Defendant Janet Dees submitted an affidavit in which she attested that she is the President of Defendant American Vascular Access, LLC, whose affiliates include the Defendant AVA Affiliates, and that she is a member of Defendant American Vascular, as well as each of the Defendant AVA Affiliates and the Nominal Defendants. (Doc. 1-1 at 2-5). Defendant Dees attested that, as a result of the AVA Affiliates' investments in the Nominal Defendants, the AVA Affiliates have received more than $750,000 in distributed earnings or dividends, and 10% of those earnings or dividends received from their investments would exceed $75,000. (Id. at 5).

Defendant Dees also submitted a supplemental affidavit on October 17, 2016, in which she further attested that she is the

---

[3] According to Plaintiff's allegations in the complaint, those future investment opportunities included the opportunity to invest in (and own up to 10% of) each of the AVA Affiliates and Nominal Defendants. (Doc. 1-2 at 7, 9-10).

manager of the Nominal Defendants Columbus Vascular Center, LLC; Douglas Vascular Center, LLC; Duval Vascular Center, LLC; Gateway Vascular Center, LLC; and Newnan Vascular Center, LLC, and she was the former manager and a member of AVA Affiliates Defendant Sarasota Holdings, LLC. (Doc. 19 at 2). Defendant Dees attested that, given her positions in these companies, as well as her prior experience and training in the industry as a dialysis nurse, she is familiar with the industry-wide accepted valuation methods for vascular centers and has applied those valuation tools to develop, buy, and sell centers for approximately ten years. (Id. at 2-3; Doc. 1-1 at 2). Defendant Dees attested that in 2015 and 2016, five of the AVA Affiliates had collective annualized earnings of at least $1,075,000 and that the industry standard in valuing vascular centers is five to eight times earnings. (Doc. 19 at 4). Thus, Dees attested that Plaintiff's claimed 10% interest in these entities would necessarily exceed $75,000. (Id.).

In its Motion to Remand, Plaintiff argues that Dees' testimony is vague and speculative and does not take into account whether a profit has been realized by each entity. (Doc. 7 at 9). The Court disagrees. Having carefully reviewed the evidence at issue, the Court finds that Defendant Dees'

affidavit testimony is a reasonable estimate of the actual value of the contested entities and Plaintiff's claimed 10% interest.[4] Thus, it is relevant evidence that supports Defendants' argument that the amount in controversy in this case exceeds $75,000.

In addition, as stated above, Plaintiff seeks punitive damages in this case against multiple defendants for intentional torts including fraud, conspiracy, and tortious interference with contractual and business relationships. "Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases." Rae v. Perry, 392 Fed. Appx. 753, 755 (11th Cir. 2010); see also Benandi v. Mediacom S.E., LLC, 2011 U.S. Dist. LEXIS 125084, *13, 2011 WL 5077403, *4 (S.D. Ala. Sept. 30, 2011), report and recommendation adopted, 2011 WL 5077108 (S.D. Ala. Oct. 24, 2011) (it is "appropriate to consider claim for punitive damages when determining the jurisdictional amount in controversy.").

> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. See id. at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint

---

[4] The Court notes that Plaintiff does not disclaim damages in excess of $75,000 but, rather, simply challenges the adequacy of Defendants' proof of the amount in controversy.

> ... establishes the jurisdictional amount."
> See id. at 770 (quoting Roe v. Michelin N.
> Am., Inc., 637 F. Supp. 2d 995, 999 (M.D.
> Ala. 2009)); see also Williams, 269 F.3d at
> 1319 (11th Cir. 2001) (allowing district
> courts to consider whether it is "facially
> apparent" from a complaint that the amount
> in controversy is met).  Instead, courts
> may use their judicial experience and
> common sense in determining whether the
> case stated in a complaint meets federal
> jurisdictional requirements.  This approach
> is consistent with those of other circuits.

Roe, 613 F.3d at 1062.

Having considered the allegations in Plaintiff's complaint, as well as Defendant Dee's affidavit testimony concerning the reasonable estimate of the value of the entities in which Plaintiff claims entitlement to a 10% interest, and Plaintiff's multiple claims for punitive damages, the Court finds that Defendants have demonstrated by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.  Accordingly, Plaintiff's Motion to Remand (Doc. 7) is due to be denied.

**III. Motion to Transfer**

As set forth above, Defendant American Vascular filed a Motion to Transfer this action to the Middle District of Florida pursuant to 28 U.S.C. Section 1404(a).  Defendant argues that the parties to this action agreed in a December 30, 2009, Purchase Agreement that venue for any dispute arising out of the agreement would be in St. Petersburg, Florida, which is in the

Middle District of Florida, and, further, that this action is due to be transferred to the Middle District of Florida on the basis of *forum non conveniens*. (Doc. 2 at 1-3). Having reviewed this issue at length, the Court disagrees.

Defendant bases its first argument for transfer on a Forum Selection Clause contained in a Purchase Agreement entered on December 30, 2009, between AVA Mobile Holdings, LLC ("AVAMH")(a non-party to this action), Mobile Vascular Labs, LLC ("MVL") (a non-party to this action), and nine individual doctors (all non-parties to this action). (Doc. 1-1 at 9, 26, 28-30). Notwithstanding American Vascular's repeated representations in its briefs to this Court that it is a party to the Purchase Agreement, the agreement itself places the matter beyond dispute that Defendant American Vascular is neither a signatory nor a party to that agreement.[5]

It is elementary that "[a] third person has no rights under a contract between others unless the contracting parties intend that the third person receive a direct benefit enforceable in court." Russell v. Birmingham Oxygen Serv., Inc., 408 So. 2d 90, 93 (Ala. 1981) (citations omitted) ("Since it is apparent from the face of the contract that Southeastern Medical is not a third party beneficiary, Southeastern Medical has no standing to enforce it in court."). Here, Defendant American Vascular does

---

[5] Counsel for Defendant American Vascular conceded at a hearing conducted on November 7, 2016, that American Vascular is neither a signatory nor a party to the agreement.

not claim that it is a third-party beneficiary of the Purchase Agreement between non-parties AVAMH, MVL, and the nine individual doctors who entered the agreement. Therefore, its attempt to enforce the Forum Selection Clause in an agreement to which it is not a party is completely without merit.[6]

Second, Defendant American Vascular argues that this action is due to be transferred to the Middle District of Florida on the basis of *forum non conveniens*. (Doc. 2 at 3). 28 U.S.C. 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C.A. § 1404(a). "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." Continental Motors, Inc. v. Jewell Aircraft, Inc., 882 F. Supp. 2d 1296, 1312 (S.D. Ala. 2012) (quoting A.J. Taft Coal Co. v. Barnhart, 291 F.

---

[6] The Court is not persuaded by Defendant's argument that, although it admittedly is not a party to the Purchase Agreement, it should be allowed to enforce the forum selection clause in the agreement because Plaintiff is attempting to enforce other portions of that same agreement against the Defendant. Indeed, it has not been lost on the Court that both Plaintiff and Defendants have unnecessarily complicated the issues in this case by loosely and inaccurately referencing the actual parties to the subject Purchase Agreement when it suited their own purposes. The Court will address Plaintiff's claims related to the Purchase Agreement in its discussion of Defendants' Motion to Dismiss for failure to state a claim. For now, as concerns Defendant's Motion to Transfer, the Court declines to accept Defendant's invitation to suspend the basic rules of contract law for either party's advantage.

Supp. 2d 1290, 1307 (N.D. Ala. 2003)).  "[I]n the usual motion
for transfer under section 1404(a), the burden is on the movant
to establish that the suggested forum is more convenient."  Id.
at 1312-13 (quoting In re Ricoh Corp., 870 F.2d 570, 573 (11th
Cir. 1989)).

Under the circumstances presented, Defendant's argument that
the venue of this action should be moved from this district to
the Middle District of Florida is unavailing.  First, it is well-
settled that the plaintiff's choice of forum (in this case,
Vascular Ventures' decision to file suit in a state court found
in the Southern District of Alabama) "is entitled to substantial
weight and will not lightly be cast aside."  Continental, 882 F.
Supp. 2d at 1313 (citing Robinson v. Giarmarco & Bill, P.C., 74
F.3d 253, 260 (11th Cir. 1996)) ("The plaintiff's choice of forum
should not be disturbed unless it is clearly outweighed by other
considerations."); Bartronics, Inc. v. Power-One, Inc., 510 F.
Supp. 2d 634, 637 (S.D. Ala. 2007) ("a plaintiff's choice of
forum should be honored so long as venue is proper there, unless
substantial countervailing considerations militate to the
contrary").

Further, even under a traditional § 1404(a) balancing test,
Defendant American Vascular has failed to establish that the
proposed new forum is more convenient than Vascular Ventures'
selected forum.  In this analysis, once it is established that
the action could originally have been brought in the proposed
transferee forum (which it could have been, inasmuch as a

substantial part of the events giving rise to the claim allegedly occurred there),[7] courts examine "whether a balancing of the convenience of the parties and the interest of justice favors transfer in the specific case." Continental, 882 F. Supp. 2d at 1313 (citations omitted).  In performing this analysis, relevant factors include: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances."  Id. at 1314 (quoting Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

With respect to witnesses, it does not appear that Alabama is an inconvenient forum, given that many of the witnesses are already in this district, and others are located nearby in an adjacent state.  Further, although Defendant argues that two "third-party" witnesses are outside of the forum, one of those witnesses would have to travel from Missouri regardless of which forum was chosen.  (Doc. 2 at 4).  As to the convenience of the

---

[7] American Vascular asserts that its negotiations with Plaintiff were made from its office in Palm Harbor, Florida, which is located in the Middle District of Florida.  (Doc. 1-1 at 6).

parties, there undoubtedly will be some inconvenience to the defendants attendant to defending themselves in Alabama; however, as the Eleventh Circuit has recognized, "modern methods of transportation and communication have lessened the burden of defending a suit in a foreign jurisdiction." Continental, 882 F. Supp. 2d at 1314 (quoting Mutual Service Ins. Co. v. Frit Industries, Inc., 358 F.3d 1312, 1320 (11th Cir. 2004)). This is particularly true where, as here, many of the defendants are based in a neighboring state, such that vast geographic distances (and the associated inconveniences and expenses of same) are not at play. Similarly, the remaining factors either favor Alabama as a more convenient forum, or the two forums are roughly equal: e.g., this Court will be more familiar with the governing Alabama law; all or most of the relevant documents can be produced without regard to location; significant underlying events occurred in both Alabama and Florida; the relative means of the parties is a non-issue here; and there appears to be little genuine risk of unwilling witnesses who are beyond the subpoena power of the forum court.

After careful consideration, based on the totality of the circumstances and the interests of justice, the Court concludes that Defendant American Vascular has not met its heavy burden under § 1404(a) of showing that the desired transferee forum is so much more convenient than Alabama that it should override Plaintiff's choice of forum. In fact, the Court is far from convinced that the Southern District of Alabama is, on balance,

any less convenient as a forum for trial than the Middle District of Florida. Accordingly, Defendant's Motion to Transfer Venue (Doc. 2) is due to be denied.

## IV. Motion to Dismiss for Lack of Personal Jurisdiction

As set forth above, the AVA Affiliates Defendants and the Nominal Defendants filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), arguing that the Court lacks personal jurisdiction over each of them.[8] (Doc. 3 at 1). For the reasons that follow, the Court finds that their Motion to Dismiss is due to be granted.

### A. Standard of Review

It is well settled that the plaintiff "has the burden of establishing a prima facie case of personal jurisdiction." Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). The plaintiff meets its burden if it "presents enough evidence to withstand a motion for directed verdict." Id. (internal quotation marks omitted). When a "defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that

---

[8] Defendants American Vascular and Janet Dees do not challenge personal jurisdiction. (Doc. 3 at 2).

the defendant is not subject to jurisdiction." Id.   When a plaintiff's "complaint and supporting affidavits and documents conflict with the Defendants' affidavits," the court "must construe all reasonable inferences in favor of the plaintiff." Id.

In reviewing a challenge to personal jurisdiction, the court must undertake a two-part analysis.   The court must evaluate its jurisdiction under the state long-arm statute and then determine whether jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.   See Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855-56 (11th Cir. 1990).   In Alabama, the limits of long-arm jurisdiction are coextensive with due process under the federal constitution; thus, the court need undertake only one analysis. Rule 4.2, Ala. R. Civ. P.;[9] Frye v. Smith, 67 So. 3d 882, 892 (Ala. 2011); see also Clark v. Deal, 2009 U.S. Dist. LEXIS

---

[9] Alabama's long-arm statute provides, in part:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States. . . .

Ala. R. Civ. P. 4.2(b) (Effective August 1, 2004).

26420, 2009 WL 902533, *2 (M.D. Ala. Mar. 31, 2009).

The due process inquiry has two requirements.  The defendant must have sufficient "minimum contacts" with the forum State.  International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945).  In addition, the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice."  Id.

There are two types of personal jurisdiction: "general" and "specific."  There is general personal jurisdiction over a party when "the cause of action does not arise out of . . . the [party's] activities in the forum State," but there are "continuous and systematic" contacts between the two.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).  Specific jurisdiction is based on the party's contacts with the forum State that are related to the cause of action.  Id. at 414 n.8.

In this case, there is no allegation that Defendants have had general contacts with Alabama unrelated to this lawsuit.  Thus, the only issue is whether asserting specific personal jurisdiction over these Defendants comports with due process.

For specific personal jurisdiction, the contacts at issue must satisfy the "minimum contacts" test.  "Minimum contacts" involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it.

Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that "[it] should reasonably anticipate being haled into court there." Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996)(citations omitted).

The minimum contacts analysis is related to the requirement of the Due Process Clause that "individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal quotation marks omitted). This is because a defendant who has "purposefully directed his activities at residents in the forum," such that "litigation results from alleged injuries that arise out of or relate to those activities," can expect to be liable to suit in that forum. Id. (internal quotation marks omitted); see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) (the court must determine whether the defendant engaged in some act by which the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

### B. Analysis

Plaintiff filed suit in the Circuit Court of Mobile County, Alabama, against the AVA Affiliates Defendants and the Nominal Defendants on August 9, 2016. (Doc. 1-2). Plaintiff asserts claims against the AVA Affiliates (along with Defendants American Vascular and Dees) for conspiracy (Count Six) and intentional interference with contractual and business relations (AVA Affiliates only) (Counts Seven and Eight). (Doc. 1-2 at 15-19). Plaintiff asserts no claims against the Nominal Defendants. (Id.).

Specifically, in Count Six of the complaint, Plaintiff alleges that the Defendant AVA Affiliates are managed and controlled by Defendant Janet Dees; that Defendant American Vascular is managed and controlled by Defendant Janet Dees; that Dees' knowledge of Plaintiff's rights pursuant to the December 30, 2009, incentive agreement is imputed to the AVA Affiliates; and that the AVA Affiliates conspired with Defendants Dees and American Vascular to "fraudulently misrepresent and/or suppress the existence of joint ventures and business opportunities in which Plaintiff was contractually entitled to purchase up to a 10% interest." (Doc. 1-2 at 15-16). In addition, in Counts Seven and Eight, Plaintiff alleges that the "December 30, 2009 incentive agreement constitutes a valid contractual relationship between the Plaintiff and Defendant [American Vascular];" that the AVA Affiliates are not parties to the contractual and business relationship between Plaintiff and Defendant American

Vascular; that Janet Dees manages and controls the AVA Affiliates and Defendant American Vascular; that Dees' knowledge of Plaintiff's business relationship with American Vascular and Plaintiff's rights pursuant to the December 30, 2009, incentive agreement are imputed to the AVA Affiliates; and that the AVA Affiliates "intentionally interfered ["for an improper purpose"] with this contract by doing business and entering into contracts and other business arrangements with third-parties, despite having knowledge that the Defendants had breached the December 30, 2009 incentive agreement and that every contract entered into by an AVA Subsidiary violated the terms of the December 30, 2009 agreement." (Doc. 1-2 at 16-19).

The AVA Affiliates and the Nominal Defendants maintain that the Court lacks both general and specific personal jurisdiction over them and that Plaintiff's action against them is, therefore, due to be dismissed. In support of their Motion to Dismiss, Defendants submit the affidavit of Defendant Dees, in which she attests that the AVA Affiliates Defendants (which include AVA Sarasota Holdings, LLC; AVA Newnan Holdings, LLC; AVA Columbus Holdings, LLC; AVA Douglas Holdings, LLC; AVA Saint Louis Holdings, LLC; AVA Valley Holdings LLC; and AVA Duval Holdings, LLC) are all Florida limited liability companies whose members are citizens of either Florida, Ohio, Missouri, or New York.[10]

---

[10] Defendant Dees attested that she is a citizen of the State of Florida, and American Vascular is a Florida limited liability company whose members are all citizens of the State of Florida. (Doc. 3-1 at 2).

(Doc. 3-1 at 3).   According to Dees, none of the AVA Affiliates Defendants is an Alabama limited liability company, nor are any of their members citizens of the State of Alabama.  (Id.).  Dees further attests that none of the Nominal Defendants is an Alabama limited liability company, nor are any of their members citizens of the State of Alabama.  (Id. at 5-6).  Dees attests that neither the Nominal Defendants nor the AVA Affiliates has any connection with the State of Alabama or the Purchase Agreement at issue, and none of these Defendants is registered to do business in Alabama.  (Id. at 6).  In other words, the AVA Affiliates and the Nominal Defendants have no contacts whatsoever with the State of Alabama.

Plaintiff does not dispute Defendants' evidence but responds that the Court can still assert specific personal jurisdiction over these defendants,[11] despite the lack of any contacts with the State of Alabama, based on two theories: (1) the conspiracy theory of personal jurisdiction; and (2) the intentional tort theory of jurisdiction.[12]   (Doc. 11 at 6-10).   The Court disagrees.

---

[11] The Court rejects Plaintiff's alternative argument that it is not required to establish personal jurisdiction over the "Nominal" Defendants in this case.   (Doc. 11 at 5 n.4).  Plaintiff has cited no binding authority which would support that argument, and the Court's research has revealed no such authority.

[12] The Court notes that Plaintiff does not allege that Defendant Janet Dees, over whom the Court does have personal jurisdiction, is the mere "alter ego" of these Defendants based on her membership in and/or management of these Defendants.  (Doc. 11).

First, with respect to the conspiracy theory of personal jurisdiction, Plaintiff cites <u>Bowman v. Hodge Mgmt. Grp., LLC</u>, 2016 U.S. Dist. LEXIS 82950, *17, 2016 WL 3483170, *6 (N.D. Ala. June 27, 2016), in which the court discussed the conspiracy theory of personal jurisdiction, explaining:

> "Alabama courts have recognized that, in an appropriate case, specific jurisdiction can be based upon the purposeful conspiratorial activity of a nonresident defendant aimed at an Alabama plaintiff." <u>Ex parte Alamo Title Co.</u>, 128 So. 3d 700, 713 (Ala. 2013) (citing <u>Ex prate Reindel</u>, 963 So. 2d 614, 622-24 (Ala. 2007) and <u>Ex parte Barton</u>, 976 So. 2d 438, 443-44 (Ala. 2007)). To establish personal jurisdiction under a conspiracy theory, "the plaintiff must plead with particularity 'the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.'" <u>Id.</u> (quoting <u>Ex parte McInnis</u>, 820 So. 2d 795, 806-07 (Ala. 2001)) (some quotation marks omitted). The elements of civil conspiracy in Alabama are: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means. <u>Luck v. Primus Auto. Fin. Servs., Inc.</u>, 763 So. 2d 243, 247 (Ala. 2000). Although "the conspiracy averments . . . must exceed "bald speculation" and mere conclusory assertions, the burden is not heavy, especially "[w]hen determination of the jurisdictional facts is intertwined with and may be dispositive of the questions of ultimate liability." <u>Ex parte Reindel</u>, 963 F.3d 614, 623 (Ala. 2007) (quoting <u>McLaughlin v. Copeland</u>, 435 F. Supp. at 513, 530 (D. Md. 1977)).

<u>Bowman</u>, 2016 U.S. Dist. LEXIS 82950 at *17, 2016 WL 3483170 at *6.

With respect to this theory of personal jurisdiction, the

Court need go no further than Plaintiff's allegations regarding the "overt acts" of the conspiracy taken within the forum to dispose of this argument. In the complaint, Plaintiff alleges that Defendants Dees, American Vascular, and the AVA Affiliates conspired to fraudulently misrepresent and/or suppress the existence of future business opportunities by American Vascular in which Plaintiff was contractually entitled to purchase a 10% interest. (Doc. 1-2 at 15-16). According to Plaintiff, future business opportunities arose after December 30, 2009, those being, the formation of the AVA entities named herein as Defendants (*i.e.*, the AVA Affiliates and the Nominal Defendants). (Id. at 7-9). Plaintiff alleges that Dees, American Vascular, and the AVA Affiliates conspired to defraud about the investment opportunities that arose in forming the AVA entities. (Id. at 6-7, 15-16).

The problem for Plaintiff lies in the timing of the overt acts of the conspiracy that occurred in Alabama. According to Plaintiff, the overt acts by Dees and American Vascular (which Plaintiff seeks to impute to the AVA Affiliates) occurred on or before December 30, 2009, when Dees and American Vascular contacted Plaintiff and its member doctors in Alabama to negotiate the purchase of the interventional nephrology practice in Mobile, Alabama, on which the December 30, 2009, Purchase Agreement was based. (Id. at 6-7). In other words, the overt acts alleged to have taken place within the forum in furtherance of the conspiracy occurred *before* the AVA Affiliates Defendants

allegedly entered the conspiracy.  Indeed, the overt acts alleged to have taken place in Alabama occurred before these Defendants even existed.  Thus, those overt acts cannot be imputed to the AVA Affiliates for purposes of establishing personal juridiction over them.[13]

Second, with respect to the intentional tort theory of personal jurisdiction, Plaintiff again cites Bowman, wherein the court exercised personal jurisdiction over a bank based on allegations that the bank had intentionally interfered with the plaintiff's business relations with other defendants to cut plaintiff out of a commission on the sale of the bank's airplane.  In Bowman, the plaintiff alleged that he contacted the bank to discuss the sale of its aircraft, that the bank knew of his broker contract with the potential buyer, that the bank went around him to sell the aircraft directly to the buyer, thus "target[ing]" him in the forum.  Bowman, 2016 U.S. Dist. LEXIS 82950 at *17, 2016 WL 3483170 at *7.  The court found that the bank's intentional conduct outside the forum "was calculated to cause injury to the plaintiff in the forum," and, thus, the bank "c[ould] not claim to be surprised at being haled into court in the forum."  Id., 2016 U.S. Dist. LEXIS 82950 at *17, 2016 WL 3483170 at *6-7.

Defendants argue, however, that those contacts do not exist

---

[13] Plaintiff does not allege that the Nominal Defendants were involved in the alleged conspiracy.  Thus, Plaintiff's attempt to establish personal jurisdiction over the Nominal Defendants based on this theory is unavailing for this reason as well.

in the present case and, further, that the mere allegation of an intentional tort that causes injury within a forum is insufficient to establish personal jurisdiction over an out-of-state defendant.  The Court agrees.

In Walden v. Fiore, __ U.S. __, 134 S. Ct. 1115, 1123, 188 L. Ed. 2d 12 (2014), the Supreme Court expressly held that a "forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."  The Walden case involved a defendant/federal agent who searched and seized cash from plaintiffs while at an airport in Georgia.  The plaintiffs sued the defendant in Nevada, despite the fact that the defendant had never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada.  In reversing the Ninth Circuit's holding that the federal district court in Nevada could exercise of personal jurisdiction over the Georgia defendant, the Supreme Court discussed its earlier decision in Calder v. Jones, 465 U.S. 783 (1984), a case relied upon by Plaintiff here.  The Court explained:

> [O]ur "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.  See, e.g., International Shoe, supra, at 319, 66 S. Ct. 154 (Due process "does not contemplate that a state may make binding a judgment in

personam against an individual . . . with
which the state has no contacts, ties, or
relations"); Hanson, supra, at 251, 78 S.
Ct. 1228 ("However minimal the burden of
defending in a foreign tribunal, a defendant
may not be called upon to do so unless he
has had the 'minimal contacts' with that
State that are a prerequisite to its
exercise of power over him"). Accordingly,
we have upheld the assertion of jurisdiction
over defendants who have purposefully
"reach[ed] out beyond" their State and into
another by, for example, entering a
contractual relationship that "envisioned
continuing and wide-reaching contacts" in
the forum State, Burger King, supra, at 479–
480, 105 S. Ct. 2174, or by circulating
magazines to "deliberately exploi[t]" a
market in the forum State, Keeton, supra, at
781, 104 S. Ct. 1473. And although physical
presence in the forum is not a prerequisite
to jurisdiction, Burger King, supra, at 476,
105 S. Ct. 2174, physical entry into the
State — either by the defendant in person or
through an agent, goods, mail, or some other
means — is certainly a relevant contact.
See, e.g., Keeton, supra, at 773–774, 104 S.
Ct. 1473.

But the plaintiff cannot be the only link
between the defendant and the forum. Rather,
it is the defendant's conduct that must form
the necessary connection with the forum
State that is the basis for its jurisdiction
over him. See Burger King, supra, at 478,
105 S. Ct. 2174 ("If the question is whether
an individual's contract with an out-of-
state party alone can automatically
establish sufficient minimum contacts in the
other party's home forum, we believe the
answer clearly is that it cannot"); Kulko v.
Superior Court of Cal., City and County of
San Francisco, 436 U.S. 84, 93, 98 S. Ct.
1690, 56 L.Ed.2d 132 (1978) (declining to
"find personal jurisdiction in a State . . .
merely because [the plaintiff in a child
support action] was residing there"). To be

sure, a defendant's contacts with the forum
State may be intertwined with his
transactions or interactions with the
plaintiff or other parties. But a
defendant's relationship with a plaintiff or
third party, standing alone, is an
insufficient basis for jurisdiction. See
Rush, supra, at 332, 100 S. Ct. 571
("Naturally, the parties' relationships with
each other may be significant in evaluating
their ties to the forum. The requirements of
International Shoe, however, must be met as
to each defendant over whom a state court
exercises jurisdiction"). Due process
requires that a defendant be haled into
court in a forum State based on his own
affiliation with the State, not based on the
"random, fortuitous, or attenuated" contacts
he makes by interacting with other persons
affiliated with the State. Burger King, 471
U.S., at 475, 105 S. Ct. 2174 (internal
quotation marks omitted).

These same principles apply when intentional
torts are involved. In that context, it is
likewise insufficient to rely on a
defendant's "random, fortuitous, or
attenuated contacts" or on the "unilateral
activity" of a plaintiff. Ibid. (same). A
forum State's exercise of jurisdiction over
an out-of-state intentional tortfeasor must
be based on intentional conduct by the
defendant that creates the necessary
contacts with the forum.

Calder v. Jones, 465 U.S. 783, 104 S. Ct.
1482, 79 L. Ed. 2d 804, illustrates the
application of these principles. In Calder,
a California actress brought a libel suit in
California state court against a reporter
and an editor, both of whom worked for the
National Enquirer at its headquarters in
Florida. The plaintiff's libel claims were
based on an article written and edited by
the defendants in Florida for publication in
the National Enquirer, a national weekly
newspaper with a California circulation of

roughly 600,000.

We held that California's assertion of
jurisdiction over the defendants was
consistent with due process. Although we
recognized that the defendants' activities
"focus[ed]" on the plaintiff, our
jurisdictional inquiry "focuse[d] on 'the
relationship among the defendant, the forum,
and the litigation.'" Id., at 788, 104 S.
Ct. 1482 (quoting Shaffer, 433 U.S., at 204,
97 S. Ct. 2569). Specifically, we examined
the various contacts the defendants had
created with California (and not just with
the plaintiff) by writing the allegedly
libelous story.

We found those forum contacts to be ample:
The defendants relied on phone calls to
"California sources" for the information in
their article; they wrote the story about
the plaintiff's activities in California;
they caused reputational injury in
California by writing an allegedly libelous
article that was widely circulated in the
State; and the "brunt" of that injury was
suffered by the plaintiff in that State. 465
U.S., at 788–789, 104 S. Ct. 1482. "In sum,
California [wa]s the focal point both of the
story and of the harm suffered." Id., at
789, 104 S. Ct. 1482. Jurisdiction over the
defendants was "therefore proper in
California based on the 'effects' of their
Florida conduct in California." Ibid. . . .

Applying the foregoing principles, we
conclude that petitioner lacks the "minimal
contacts" with Nevada that are a
prerequisite to the exercise of jurisdiction
over him. Hanson, 357 U.S., at 251, 78 S.
Ct. 1228. It is undisputed that no part of
petitioner's course of conduct occurred in
Nevada. Petitioner approached, questioned,
and searched respondents, and seized the
cash at issue, in the Atlanta airport. It is
alleged that petitioner later helped draft a
"false probable cause affidavit" in Georgia

and forwarded that affidavit to a United
States Attorney's Office in Georgia to
support a potential action for forfeiture of
the seized funds. 688 F.3d, at 563.
Petitioner never traveled to, conducted
activities within, contacted anyone in, or
sent anything or anyone to Nevada. In short,
when viewed through the proper lens —
whether the defendant's actions connect him
to the forum — petitioner formed no
jurisdictionally relevant contacts with
Nevada. . . .

Relying on Calder, respondents emphasize
that they suffered the "injury" caused by
petitioner's allegedly tortious conduct
(i.e., the delayed return of their gambling
funds) while they were residing in the
forum. . . . This emphasis is likewise
misplaced. As previously noted, Calder made
clear that mere injury to a forum resident
is not a sufficient connection to the forum.
Regardless of where a plaintiff lives or
works, an injury is jurisdictionally
relevant only insofar as it shows that the
defendant has formed a contact with the
forum State. The proper question is not
where the plaintiff experienced a particular
injury or effect but whether the defendant's
conduct connects him to the forum in a
meaningful way.

Walden, __ U.S. __, 134 S. Ct. at 1122-25.  See also Murphy v.

Am. Gen. Life Ins. Co., 2015 U.S. Dist. LEXIS 94251 * 34, 2015

WL 4379834, *11 (C.D. Cal. July 15, 2015)("[u]nlike the

defendants in Calder, it has neither been alleged nor shown that

the defendants took any particular, meaningful actions in

California. That Plaintiff lives here, and suffered alleged

financial harm here, is not a basis for personal jurisdiction

over the moving defendants.").

Applying the foregoing authorities to the present case, Plaintiff's allegations of injury alone do not evince a connection between the AVA Affiliates and Alabama and, thus, are insufficient to establish personal jurisdiction over these Defendants, who admittedly have no contacts with the State of Alabama other than Plaintiff's allegations that they intentionally caused injury to Plaintiff in the State of Alabama.[14]   Accordingly, this theory of personal jurisdiction fails.

For the foregoing reasons, the AVA Affiliates and the Nominal Defendants' Motion to Dismiss for lack of personal jurisdiction (Doc. 3) is due to be granted.

**V. Motion to Dismiss for Failure to State a Claim**

As set forth above, Defendants American Vascular and Janet Dees have filed a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 4 at 1).   For the reasons that follow, the Court finds that Defendants' Motion to Dismiss is due to be granted in part and denied in part.

---

[14] As previously noted, Plaintiff does not allege that the Nominal Defendants were involved in any intentional wrongful conduct. Thus, Plaintiff's attempt to establish personal jurisdiction over the Nominal Defendants on this theory is unavailing for this reason as well.

A. **Standard of Review**

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . ., on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). The plaintiff must plead "enough facts to state a claim that is plausible on its face." Id. at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." Id.

"[U]unsupported conclusions of law or of mixed fact and law" will not defeat a Rule 12(b)(6) motion for dismissal. Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative

34

explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

### B. **Analysis**

As discussed above, Defendants American Vascular and Dees have filed a motion to dismiss for failure to state a claim as to Plaintiff's claims for breach of contract (Count One); Fraud (Counts Two, Three, Four and Five); Conspiracy (Count Six); and Intentional Interference with Contractual and Business Relations (Counts Seven and Eight).  The Court will address each of those claims in turn.

### 1. **Breach of Contract (Count One)**

In the complaint, Plaintiff alleges that Defendants American Vascular and Janet Dees entered into a contract with Plaintiff Vascular Ventures, LLC, on December 30, 2009; that Vascular Ventures fulfilled it obligations under the agreement; that American Vascular and Dees breached their contractual obligations to offer Vascular Ventures and its doctors an option of purchasing a 10% stake in their future ventures; and that Vascular Ventures has been damaged by American Vascular's and Dees' breaches.  (Doc. 1-2 at 10-11).  More precisely, Plaintiff alleges in the complaint that, in 2009, Defendants American Vascular and Dees negotiated with Vascular Ventures to buy an interventional nephrology practice in Mobile, Alabama.  (Id. at 6).  As a material inducement to the purchase, Defendants Dees and American Vascular promised Vascular Ventures that any future

joint business venture involving Defendant American Vascular would be presented to Plaintiff Vascular Ventures for investment. (Id. at 6-7).   This proposed agreement was discussed in a March 11, 2009, Letter of Intent from Dees and American Vascular and was ultimately agreed upon in a letter dated December 30, 2009 (referred to by Plaintiff as the "Side Letter agreement."). (Id. at 7). Plaintiff alleges:

> 35. To complete the negotiated deal, by letter dated December 30, 2009 and addressed to the Plaintiff-Mobile resident, Defendant Janet R. Dees promised/contracted:
>
>> "As additional incentive to Vascular Ventures or its physician members, American Vascular (AVA) will reserve a minimum of up to 10% of AVA's portion of any future joint venture or business opportunity that may arise out of AVA's general course of business, for Vascular Ventures doctors to invest. Vascular Ventures and its physicians will be offered the same terms and conditions as other investors and may elect or be offered additional ownership beyond 10%, but will always be offered at least 10% of AVA's position."

(Id.).   According to Plaintiff, pursuant to this December 30, 2009, agreement, the nine physicians (who formed Plaintiff Vascular Ventures LLC on that same date) sold a 40% interest in Mobile Vascular Labs, LLC, to AVA Mobile Holdings, LLC, an affiliate of Defendant American Vascular.[15]   (Id.).   However,

---

[15] Plaintiff explains that, in anticipation of closing the deal with American Vascular on its purchase of 40% of the outpatient lab-based interventional nephrology practice in Mobile, Alabama, the parties all created new LLC's.   (Doc. 13 at 3-6).   The lab/nephrology practice became an entity known as Mobile (Continued)

when Dees and American Vascular subsequently formed future vascular entities (those entities being the AVA Affiliates and Nominal Defendants in this case), they breached their agreement to offer Vascular Ventures or its doctors/members a chance to buy into the ventures. (Id. at 7-10).

In their Motion to Dismiss, Defendants Dees and American Vascular argue that the Purchase Agreement entered on December 30, 2009 (Doc. 1-1 at 9) does not include the Side Letter agreement contained in the letter written by Dees on December 30, 2009; that the Purchase Agreement contains a merger and integration clause prohibiting reference to the Side Letter agreement; and that Plaintiff's complaint fails to state a claim for breach of contract upon which relief can be granted. (Doc. 4 at 7).

Plaintiff Vascular Ventures counters that its breach of contract claim is based on two agreements: (1) the Side Letter agreement, which is a "stand alone" contract between Plaintiff Vascular Ventures and Defendants Dees and American Vascular, and (2) the Side Letter agreement incorporated as an "ancillary agreement" into the Purchase Agreement.[16]  (Doc. 13 at 12-15).

---

Vascular Labs, LLC ("MVL"), a non-party to this action; the doctors/sellers formed an entity known as Vascular Ventures, LLC (the plaintiff here), which was conveyed a 60% interest in MVL; and Defendant American Vascular formed an entity known as AVA Mobile Holdings, LLC ("MVAMH"), a non-party to this action, which was conveyed a 40% interest in MVL. (Id. at 5-6).

[16] "Ancillary agreements" are defined in the Purchase Agreement as (Continued)

As a preliminary matter, the Court rejects Plaintiff's second argument related to the Purchase Agreement. It is without dispute in this case that the parties to the December 30, 2009, Purchase Agreement are nine individual doctors ("Sellers") (all non-parties to this case), MVL ("Seller") (a non-party to this case), and AVAMH ("Buyer") (a non-party to this case). (Doc. 1-1 at 10, 28-30). Neither Plaintiff nor any Defendant in this case alleges that it is a party or an intended third-party beneficiary to that Purchase Agreement. Therefore, even if the Side Letter agreement were assumed to be a part of the Purchase Agreement, there is no party in this lawsuit who can enforce it, nor is there any party against whom to enforce it. See Russell, 408 So. 2d at 93 ("[a] third person has no rights under a contract between others unless the contracting parties intend that the third person receive a direct benefit enforceable in court. . . . Since it is apparent from the face of the contract that Southeastern Medical is not a third party beneficiary, Southeastern Medical has no standing to enforce it in court.").

On the other hand, with respect to Plaintiff's claim that the Side Letter agreement is a stand alone contract between Vascular Ventures, Dees, and American Vascular, the Court agrees

---

"all of the agreements being executed and delivered pursuant to this Agreement, including, but not limited to, the Operating Agreement. (Doc. 1-1 at 10; Doc. 1-1 at 34).

that Plaintiff has at least stated a claim against these Defendants for breach of contract as to this agreement. "In the ordinary breach of contract action, the claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." Southern Med. Health Sys., Inc. v. Vaughn, 669 So. 2d 98, 99 (Ala. 1995). "The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 673 (Ala. 2001) (citations omitted).

The Side Letter document shows an executed, binding agreement signed by Dees, ostensibly on behalf of American Vascular, to reserve a minimum of 10% of American Vascular's future business ventures for investment by Vascular Ventures and its doctor members, in exchange for which Plaintiff/its doctor members would sell 40% of MVL to American Vascular's affiliate, AVAMH.[17]   (Doc. 13-8 at 2).   While Defendants argue that Plaintiff offered no consideration for this agreement, Plaintiff alleges in the complaint that it negotiated with Defendants to have its doctor members sell 40% of their nephrology practice to

---

[17] Plaintiff points out that, on the morning of closing on the subject Purchase Agreement on December 30, 2009, American Vascular's attorney confirmed the Side Letter agreement by email, stating: "You have previously received the executed side letter.   When we have received copies of your clients signature pages, we will send the wired proceeds to your trust account."   (Doc. 13-9 at 1).

American Vascular's affiliate, AVAMH.   (Doc. 1-2 at 6-7).   The Court finds that the allegation that Plaintiff caused its members to sell a portion of their practice to Defendants' affiliate constitutes sufficient consideration for the promises made directly to Plaintiff by Defendants.

Plaintiff further alleges that it performed its obligations under the agreement; that Defendants breached their obligations under the agreement by failing to offer Plaintiff and its member doctors the opportunity to invest in their future ventures; and that Plaintiff was damaged thereby.   (Doc. 1-2 at 6-11). Plaintiff's allegations satisfy the elements of a breach of contract claim in Alabama based on the Side Letter agreement.

The Court rejects Defendant Dees' argument that her Motion to Dismiss should be granted because she signed the Side Letter agreement only on behalf of American Vascular.   The document itself is unclear as to the precise capacity in which Dees was signing and, thus, that issue will be have to be resolved at a later stage of this litigation.   For now, Plaintiff's allegations are sufficient to state a claim for breach of the Side Letter agreement by both Defendant Dees and Defendant American Vascular.

Accordingly, Defendants Dees and American Vascular's Motion to Dismiss Plaintiff's breach of contract claim (Count One) based on the December 30, 2009, *Purchase Agreement* is due to be granted, and Defendants' Motion to Dismiss Plaintiff's breach of contract claim based on the stand alone *Side Letter agreement* is

due to be denied.

### 2. Fraud (Counts Two-Five)

In the motion to dismiss and accompanying brief, Defendants move to dismiss Plaintiff's fraud claims (Counts Two-Five) for failure to state a claim upon which relief can be granted. (Doc. 4 at 8-15). Because Plaintiff alleges fraud, the substantive allegations in the complaint must comply not only with the plausibility criteria articulated in Twombly and Iqbal, but also with *Federal Rule of Civil Procedure* 9(b)'s heightened pleading standard. See Harris v. Hancock Bank, 2011 U.S. Dist. LEXIS 40834, *8, 2011 WL 1435500, *2 (S.D. Ala. Apr. 14, 2011) ("Substantive fraud allegations 'must comply not only with the plausibility criteria articulated in Twombly and Iqbal but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316-17 (11th Cir.

2007) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

"Rule 9(b)'s heightened pleading standard may be applied less stringently . . . when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" Hill v. Morehouse Med. Assocs., 2003 U.S. App. LEXIS 27956, *10, 2003 WL 22019936, *3 (11th Cir. Aug. 15, 2003) (citations omitted).  In addition, allegations of intent or knowledge "need only give rise to a strong inference that the defendants possessed the requisite fraudulent intent." Lawrence Holdings, Inc. v. ASA Int'l, Ltd., 2014 U.S. Dist. LEXIS 154246, *29, 2014 WL 5502464, *12 (M.D. Fla. Oct. 30, 2014)(citations omitted).  "[C]onditions of a person's mind, such as intent or knowledge, may be alleged generally." Id. (citations omitted).

The Court now turns to Plaintiff's fraud claims in the present case.

### a. Negligent/Reckless Misrepresentation (Count Two)

In Count Two of the complaint, Plaintiff alleges "Negligent/Reckless Misrepresentation" against Defendant Janet Dees and Defendant American Vascular, stating: "[o]n or around December 30, 2009, Defendants Janet R. Dees and [American Vascular] negligently or recklessly made a false representation that they *would offer* Plaintiff Vascular Ventures, LLC and the

42

doctors of Plaintiff Vascular Ventures, LLC the option to purchase up to a 10% interest in all *future* joint ventures and business opportunities arising out of Defendant [American Vascular's] general course of business;" in reliance on this misrepresentation, Plaintiff and its member physicians were induced to sell 40% of MVL to American Vascular; Plaintiff's reliance was reasonable as there was no reason to believe that Defendants would not fulfill their "*promise*;" and Plaintiff was damaged thereby.  (Doc. 1-2 at 11-12) (emphasis added).

The elements of the tort of fraudulent misrepresentation are (1) a false representation (2) regarding a material *existing* fact, (3) which the plaintiff relies upon, and (4) damages proximately caused by the misrepresentation.  Smith v. J.H. Berry Realty Co., 528 So. 2d 314, 316 (Ala. 1988) (emphasis added). "[A] promise to perform a future act," on the other hand, "would be a claim of promissory fraud."  Southland Bank v. A & A Drywall Supply Co., 21 So. 3d 1196, 1211 (Ala. 2008) ("Any species of fraud based on the promise to do something in the future . . . would be a claim of promissory fraud.").

In the present case, Plaintiff alleges that Defendants Dees and American Vascular *promised* that they *would offer* Plaintiff the option of purchasing up to a 10% interest in all *future* joint ventures arising out of American Vascular's general course of business.  Clearly, these allegations sound in promissory fraud, not misrepresentation of an *existing* material fact.  Indeed, Plaintiff concedes in its brief that its claim sounds more in

promissory fraud than in fraudulent misrepresentation.   (Doc. 13 at 17 n.7).

Accordingly, Defendants Dees and American Vascular's Motion to Dismiss Plaintiff's Negligent/Reckless Misrepresentation (Count Two) is due to be granted.

### b. Promissory Fraud (Count Three)

In Count Three, Plaintiff expressly alleges a claim for "Promissory Fraud" against Defendants Dees and American Vascular, restating: "[o]n or around March 11, 2009 and December 30, 2009, Defendants Janet R. Dees and [American Vascular] made a false representation that they *would offer* Plaintiff Vascular Ventures, LLC and the doctors of Plaintiff Vascular Ventures, LLC the option to purchase up to a 10% interest in all *future* joint ventures and business opportunities arising out of Defendant [American Vascular's] general course of business;" "[a]t the time the representation was made, Defendants Janet R. Dees and [American Vascular] had no intention of providing Plaintiff with any option to buy into such *future* business opportunities;" Plaintiff reasonably relied on the misrepresentation and its members were induced by this representation to sell 40% of MVL to American Vascular; there was no reason to believe that Defendants would fail to fulfill their *promise*; and Plaintiff was damaged thereby.   (Doc. 1-2 at 12-13).

As discussed, these allegations of fraud based on the promise to do something in the future clearly sound in promissory fraud.   When asserting a claim for promissory fraud, "[t]he

burden is on the plaintiff to prove that when the promise was
made the defendant intended to deceive." Southland Bank, 21 So.
3d at 1212 (citations omitted).  "The plaintiff cannot meet his
burden merely by showing that the alleged promise ultimately was
not kept; otherwise, any breach of contract would constitute a
fraud."  Id. (citations omitted).  "[I]n order for a promise to
constitute a fraudulent misrepresentation, there must have been
at the time the promise was made an intention not to perform, and
such a promise must have been made with the intent to deceive."
Id. (citations omitted).  "[A] defendant's intent to deceive can
be established through circumstantial evidence that relates to
events that occurred after the alleged misrepresentations were
made."  Id. (citing Byrd v. Lamar, 846 So. 2d 334, 343 (Ala.
2002)).

     In the present case, Plaintiff alleges that, despite
Defendants' promise to offer Plaintiff and its member doctors the
opportunity to invest up to 10% in "all future joint ventures and
business opportunities arising out of [American Vascular's]
general course of business" (Doc. 1-2 at 12), Defendants Dees and
American Vascular formed approximately fourteen new businesses,
i.e., the entities referred to herein as the AVA Affiliates and
the Nominal Defendants, without including Plaintiff or its member
doctors as investors in a single venture.  (Doc. 1-2 at 7-9).
Thus, Plaintiff alleges, on approximately fourteen separate
occasions, one of which was only five weeks after the

agreement/promise was made,[18] Defendants Dees and American Vascular failed to keep their promise to allow Plaintiff and its doctors to invest. Assuming Plaintiff's allegations are true, a jury could infer from these circumstances, including the timing, number, and consistency of the breaches, that Defendants did not intend to perform this promise at the time that it was made.

Accordingly, Defendant Dees and American Vascular's Motion to Dismiss Plaintiff's promissory fraud claim (Count Three) is due to be denied.

### c. Fraudulent Suppression (Count Four)

In Count Four of the complaint, Plaintiff alleges "Fraudulent Suppression" against Dees and American Vascular, stating: "[s]tarting December 30, 2009, Defendants Janet R. Dees and [American Vascular] had a duty to disclose all future joint ventures or business opportunities arising out of Defendant [American Vascular's] general course of business;" "[s]ince December 30, 2009, Defendants Janet R. Dees and [American Vascular] have failed to disclose material facts about future joint ventures and business opportunities that have arisen out of [American Vascular's] general course of business;" and Plaintiff has been damaged thereby. (Doc. 1-2 at 13-14).

When asserting a claim for fraudulent suppression, Plaintiff must allege that: "(1)[t]he defendant had a duty to disclose an

---

[18] Plaintiff alleges that AVA Newnan Holdings, LLC was formed on or about February 8, 2010, only five weeks after Defendants promised to allow Plaintiff and its member doctors to invest in all future ventures. (Doc. 1-2 at 4).

existing material fact; (2) the defendant concealed or suppressed that material fact; (3) the defendant's suppression induced the plaintiff to act or refrain from acting; and (4) the plaintiff suffered actual damage as a proximate result." Cockrell v. Pruitt, 2016 Ala. LEXIS 82, *34, 2016 WL 3551542, *13 (Ala. June 30, 2016) (citations omitted) (emphasis added).

Plaintiff has alleged that, after December 30, 2009, Defendants failed to disclose/suppressed the fact that they were forming new entities (i.e., the AVA Affiliates and Nominal Defendants), ventures in which Plaintiff was entitled to invest and about which Defendants had a duty to disclose based on its December 30, 2009, agreement with Plaintiff.  (Doc. 1-2 at 13). However, Plaintiff has not alleged facts showing that, after December 30, 2009, Defendants' suppression induced Plaintiff to act or refrain from acting.  See Cockrell, 2016 Ala. LEXIS 82, at *34, 2016 WL 3551542, at *13.

Accordingly, Defendants' Motion to Dismiss Plaintiff's fraudulent suppression claim (Count Four) is due to be granted.

### d. Fraud in the Inducement (Count Five)

In Count Five of the complaint, Plaintiff alleges "Fraud in the Inducement" against Defendants Dees and American Vascular, stating: "[o]n or around December 30, 2009, Defendants Janet R. Dees and [American Vascular] made a false representation that they would offer Plaintiff Vascular Ventures, LLC and the doctors of Plaintiff Vascular Ventures, LLC the option to purchase up to a 10% interest in all future joint ventures and business

opportunities arising out of Defendant [American Vascular's] general course of business;" [a]t the time the representation was made, Defendants Janet R. Dees and [American Vascular] had no intention of providing Plaintiff with any option to buy into such future business opportunities;" Plaintiff reasonably relied on this false representation and was induced to sell 40% of MVL to American Vascular; Plaintiff's reliance was reasonable because there was no reason to believe that Defendants would fail to fulfill their promise; and Plaintiff was damaged thereby. (Doc. 1-2 at 14-15).

    "Fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action." Oakwood Mobile Homes, Inc. v. Barger, 773 So. 2d 454, 459 (Ala. 2000). With respect to Plaintiff's claim for fraud in the inducement, rather than alleging the misrepresentation of a material fact, Plaintiff merely restates its allegations that Defendants' false *promise* to Plaintiff that Vascular Ventures and its member doctors would have the opportunity to invest up to 10% in American Vascular's future ventures induced Plaintiff/its member doctors to sell 40% of MVL to Defendant American Vascular/AVAMH.[19]   (Doc. 1-2 at 6-7,

---

[19] While not material to the Court's ruling on this claim, the Court notes that Plaintiff conflates the names of the "sellers" and the "buyer" in this Count. As previously discussed, the Purchase Agreement shows, and the parties do not dispute, that
(Continued)

14-15).   These allegations essentially mirror those contained in Plaintiff's claim for promissory fraud.

The Alabama Supreme Court has stated that, "[t]he only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future . . . is when the evidence shows that, at the time of the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive." Purcell Co. v. Spriggs Enters. Inc., 431 So. 2d 515, 519 (Ala. 1983); see also Robinson v. Allstate Ins. Co., 399 So. 2d 288, 290 (Ala. 1981) ("The pleader attempts to predicate fraud on a promise which is not a representation of a material fact.").

Having already found that Plaintiff's fraud allegations based on Defendants' promise of future action sound in promissory fraud, Defendants Dees and American Vascular's Motion to Dismiss Plaintiff's claim for fraud in the inducement (Count Five) is due to be granted.

### 3. Conspiracy (Count Six)

In the complaint, Plaintiff alleges that Defendants, the AVA Affiliates, Dees, and American Vascular conspired to fraudulently misrepresent and/or suppress the existence of joint ventures and business opportunities in which Plaintiff was entitled to

the sellers in the underlying transaction were MVL and the nine individual doctors (who formed Plaintiff Vascular Ventures) and that the actual buyer was AVAMH.  (Doc. 1-1 at 10, 29-30).

purchase up to a 10% interest and that Plaintiff was damaged thereby. (Doc. 1-2 at 15-16). Having already found that the AVA Affiliates Defendants are due to be dismissed from this case for lack of personal jurisdiction, it is unnecessary to discuss them further.[20]

Turning now to Plaintiff's allegations of conspiracy against Defendants Dees and American Vascular, it is well settled that "Alabama recognizes civil conspiracy as a substantive tort." Blake v. Bank of Am., N.A., 845 F. Supp. 2d 1206, 1214 (M.D. Ala. 2012) (quoting DGB, LLC v. Hinds, 55 So. 3d 218, 234 (Ala. 2010)). "Civil conspiracy is an agreement between two or more people to do something unlawful or something lawful by unlawful means. Id. (citing Purcell, 431 So. 2d at 522). "[A] plaintiff alleging a conspiracy must have a valid underlying cause of action." Id. (quoting Drill Parts & Serv. Co. v. Joy Mfg. Co., 619 So. 2d 1280 (Ala. 1993)).

In the present case, Plaintiff alleges that Defendants Dees and American Vascular agreed to do something unlawful, *i.e.*, commit fraud, in order to prevent Plaintiff from knowing about, and taking advantage of, investment opportunities that Defendants created after December 30, 2009, in which Plaintiff was entitled to invest. Plaintiff further alleges that it was damaged by this conspiracy. (Doc. 1-2 at 15-16). Based on these allegations,

---

[20] Because the Court lacks personal jurisdiction over the AVA Affiliates Defendants, all of Plaintiff's claims against the AVA Affiliates Defendants are due to be dismissed.

the Court finds that Plaintiff has stated a claim for civil conspiracy.

Accordingly, Defendants Dees and American Vascular's motion to dismiss Plaintiff's civil conspiracy claim (Count Six) is due to be denied.

### 4. Intentional Interference with Contractual and Business Relations (Counts Seven and Eight)

Last, Plaintiff alleges that the AVA Affiliates Defendants intentionally interfered with its business and contractual relations with Defendant American Vascular. (Doc. 1-2 at 16-19). Having found that the Court lacks personal jurisdiction over the AVA Affiliates Defendants, Plaintiff's claims (Counts Seven and Eight) are due to be dismissed.

### III. Conclusion

For the reasons discussed herein, the undersigned hereby RECOMMENDS that Plaintiff's Motion to Remand (Doc. 7) is due to be DENIED; that Defendant American Vascular's Motion to Transfer Venue (Doc. 2) is due to be DENIED; that the AVA Affiliates and Nominal Defendants' Motion to Dismiss for lack of personal jurisdiction (Doc. 3) is due to be GRANTED; and that Defendants Dees and American Vascular's Motion to Dismiss for failure to state a claim (Doc. 4) is due to be GRANTED IN PART AND DENIED IN PART as follows:

(Count One) Breach of Contract – Defendants' Motion to Dismiss Plaintiff's breach of contract claim based on the *Purchase Agreement* is due to be GRANTED, and Defendants' Motion to Dismiss Plaintiff's breach of contract claim based on the

*Side Letter Agreement* is due to be DENIED;

(Count Two) Defendants' Motion to Dismiss Plaintiff's negligent/reckless misrepresentation claim is due to be GRANTED;

(Count Three) Defendants' Motion to Dismiss Plaintiff's promissory fraud claim (Count Three) is due to be DENIED;

(Count Four) Defendants' Motion to Dismiss Plaintiff's fraudulent suppression claim (Count Four) is due to be GRANTED;

(Count Five) Defendants' Motion to Dismiss Plaintiff's fraud in the inducement claim is due to be GRANTED;

(Count Six) Defendants' Motion to Dismiss Plaintiff's civil conspiracy claim is due to be DENIED;

(Counts Seven and Eight) Defendants' Motion to Dismiss Plaintiff's claims for intentional interference with business and contractual relations (Counts Seven and Eight) is due to be GRANTED.[21]

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific

---

[21] The Court recognizes that the Motion to Dismiss Plaintiff's intentional interference claims was filed by Defendants Dees and American Vascular, not by the AVA Affiliates Defendants against whom the claims are alleged. However, having found that the Court lacks personal jurisdiction over the AVA Affiliates, all of Plaintiff's claims against the AVA Affiliates are due to be dismissed, regardless of who filed the motion.

written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **7th** day of **December, 2016.**

                              /s/ SONJA F. BIVINS
                        **UNITED STATES MAGISTRATE JUDGE**